In the Matter of T.P. RICHARDSON & CO., INC., a California corporation, dba Richardson Co., Inc., Bankruptcy.

UNITED STATES of America, Plaintiff,

v.

Curtis B. DANNING, Trustee in Bankruptcy of T.P. Richardson & Co., Inc., Defendant.

Curtis B. DANNING, Trustee in Bankruptcy of T.P. Richardson & Co., Inc., Counter-Claimant,

v.

UNITED STATES of America, Counter-Defendant.

Bankruptcy No. 75–11418–JA.
Adv. No. 82–4385–JA.

United States Bankruptcy Court, C.D. California.

Sept. 19, 1983.

Mason C. Lewis, Asst. U.S. Atty., Tax Div., Los Angeles, Cal., for plaintiff.

J. Robert Nelson, Sidley & Austin, Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION

JOHN D. AYER, Bankruptcy Judge.

In *Fasson v. Magouirk,* 693 F.2d 948 (9th Cir.1983), the Ninth Circuit laid down an explicit standard to govern extensions of time for appeals from the bankruptcy court. The Court in *Magouirk* said that the rule governing extensions of time "is very strictly construed." *Id.* at 950. In this proceeding, the Internal Revenue Service ("IRS") seeks relief to extend time within which to file a notice of appeal. Finding that the IRS must prevail even under the very stringent standard of *Magouirk,* I grant the extension as requested.

The underlying case concerns the tax obligations of a bankruptcy estate. The sums in controversy run into hundreds of thousands of dollars, and the IRS asserted at oral argument that the case involves an important point of law. But none of that is strictly material to the present dispute. The dispute here centers on the application of the rules governing bankruptcy appeals, particularly former Bankruptcy Rule 802,[1] which provides that the notice of appeal from a bankruptcy judgment shall be filed within 10 days of the entry of judgment. The rule also provides that the time for filing the notice may be extended. But it says that if the extension is sought after the time has expired, then there must be a showing of "excusable neglect." *See also* former Bankruptcy Rule 922.

The Court of Appeals in *Magouirk* said that "excusable neglect" in this context "re-

---

1. The former Bankruptcy Rules were Supplanted by new Bankruptcy Rules in August 1, 1983, but all parties agree that the former Rules apply to this case.

quires (1) a finding that the party failed to learn of the entry of judgment, or (2) a finding of extraordinary circumstances, where excusing the delay is necessary to avoid injustice." *Magouirk,* 693 F.2d at 950. In this case, it seems to me that the IRS establishes both grounds—first that the IRS failed to learn of the entry of judgment and, second, that delay is necessary to avoid injustice.

A chronology will put the matter in focus. The parties filed cross-motions for summary judgment in September, 1982. The Court held the matter under submission until March 10, 1983, when it sent a letter to counsel saying that the trustee's motion for summary judgment "is granted." The letter also directed the trustee to prepare findings of fact and conclusions of law, and an order. The trustee did so and lodged them with the Court on March 16. Receiving no response, the trustee, on April 7, sent a letter to the Court asking what had become of them. The IRS for its part contacted the docket clerk with the same inquiry on April 12. Still hearing nothing, the IRS local counsel, on April 28, forwarded to Washington a recommendation that the government take an appeal in the case. The recommendation bore the notation "Time Limit:"—"Judgment not yet entered."

Still hearing nothing, the IRS local counsel, on June 14, sent a law clerk to the office of the court clerk to review the file. The law clerk spoke to the courtroom deputy in charge of the file. The law clerk's declaration explains:

> She checked in several places, including the file room, and was unable to locate the file. She then suggested that I go to the Clerk of the United States District Court to see if the file was there. It was not. Next, I checked with [the judge's] secretary to determine whether the file was in chambers. She could not locate it. She suggested that I try the Records window in the Bankruptcy Clerk's Office. The clerk there pulled a file to which was attached on the outside a large red card reading 'File Out.' Inside the file were

the Summary Judgment and the Findings of Fact And Conclusions of Law with notations to the effect that they were signed by [the judge] and filed on April 13, 1983, and entered on April 19, 1983.

In other words, she had arrived two months late. But that was not the end of things:

> On June 28, 1983, I again checked with (the court clerk) to ask her for a copy of the Findings Of Fact And Conclusions Of Law which we still had not received. At that time, she realized that the Notice Of Entry form was not properly completed because a copy was not attached to the Findings Of Fact And Conclusions Of Law, and apparently, not mailed to counsel. She also was not able to determine whether the entry had properly been made because the docket card could not be located.

In fact, the trustee had received conformed copies of the findings and conclusions of law, and the judgment, although the IRS never did. The IRS, having discovered that the judgment had in fact been entered, brought this motion to enlarge time for filing its appeal.

It may be useful now to pick up the story from a different perspective. It so happened that while this motion was pending, the judge who had decided the case left the bench, and I took over his cases. The first I knew of the case was when I was reviewing files the night before the scheduled argument on the motion. At that time, the clerk's office was unable to provide me with a complete file. Among other documents lacking, I found I did not have a copy of the very motion I was supposed to hear (though I did have a copy of the trustee's response). A deputy clerk brought me the case file itself the morning of the hearing, though it, too, was incomplete. She indicated that the case had been marked "closed" and sent to storage.

In court, counsel favored me with a copy of the docket sheet, which he had only recently been able to procure. The docket sheet did, in fact, appear to indicate that the judgment had been "docketed" on April

 

19—although later, in searching the file, I found another, somewhat inconsistent, docket sheet, marked "DUMMY" and bearing the handwritten notation "closed." This second docket sheet did not indicate that the judgment had ever been entered, although it appears to have been left incomplete as of April 13, 1983.

In reviewing the file with me after court, my own calendar clerk said it appeared to her that copies of the notice of entry never had been sent to counsel. She also noted that the file bore an "Adversary" case number. She called my attention to the fact that this case arose under the Bankruptcy Act of 1898, but that, according to the practice of the Clerk's office, cases under the 1898 Act were not supposed to have "adversary" case numbers. She offered her opinion that the presence of an adversary number on an 1898 Act case was enough in itself to create confusion over the file in the clerk's office.

The trustee concedes substantially all of this. Nonetheless, he argues that the IRS knew that something was in the wind after March 10, and that after that, it was up to the IRS to be diligent in checking the files. *See generally In re Butler's Tire and Battery Co., Inc. v. Ferrous Financial Services,* 592 F.2d 1028 (9th Cir.1979).

I cannot accept the reasoning in this case. Under the circumstances, it seems probable that the Judgment was never sent to the IRS. Moreover, it seems abundantly clear that any confusion in the case emanated from the clerk's office and that it would have taken extraordinary effort for anyone to disentangle it. Hence, I hold that the "neglect" of the IRS was "excusable" within the language of Rule 802. To hold otherwise would mean that any attorney, once he suspected that an order was imminent, would be under an impulse to deluge the clerk's office with inquiries, lest some judge find later that he should have learned something that was not obvious in the ordinary course of events. I think this policy would add to the burdens of an already overburdened clerk's office, enhancing the likelihood that even more judgments would dis-

appear into the file without notice. The IRS' motion shall be granted, and the IRS shall have 10 days from the entry of the order accompanying this Memorandum of Decision to notice its appeal in this case.